IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAREL LOTTS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-01796-AGF |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Darel Lotts for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 15, 2010, Petitioner was convicted by a jury of first-degree murder, first-degree assault, and two counts of armed criminal action. Petitioner was sentenced to a term of life without parole for the murder, a concurrent term of 30 years' imprisonment for the first-degree assault, and two concurrent terms of 20 years' imprisonment for the armed criminal actions.

In his federal habeas petition, Petitioner asserts several claims of trial court error and ineffective assistance of counsel. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

This case arises out of a drug deal that resulted in the shooting of Kurt Williams and his brother, Jamar Starks. Petitioner was charged by the State of Missouri with first-degree murder; first-degree assault; first-degree robbery; first-degree attempted robbery;

and four counts of armed criminal action. A jury trial took place from July 13–15, 2010, and the evidence at trial showed the following, as summarized by the Missouri Court of Appeals in Petitioner's direct appeal:

> [Petitioner] bought drugs from [Williams] on several occasions in the past. During the evening of July 22, 2008, [Petitioner] called Williams to buy crack cocaine from him again, but Williams was suspicious because the deal was not conducted as it had been in the past. [Petitioner] walked to the meeting spot, entered the car that Williams and his brother, [Starks], drove, and asked Williams for the drugs. When Williams handed [Petitioner] the drugs, [Petitioner] told Williams that his "brother" wanted to see the drugs on the scale. Williams agreed. [Petitioner] handed back the drugs and left the car to look for Alex Jordan ("Jordan").
>
> [Petitioner] returned to the car with Jordan, who carried a backpack. [Petitioner] and Jordan sat in the back seat, and [Petitioner] pulled out a revolver from Jordan's backpack. Williams and Starks tried to flee from the car, but [Petitioner] shot them both. Williams saw [Petitioner] and Jordan running away, but then [Petitioner] returned and shot Starks three more times.
>
> At the crime scene, the police found Starks's body and a baseball hat. A DNA analysis of the hat determined that [Petitioner's] DNA was present on it. Williams was hospitalized for a month, and when he was released from the hospital, he told the police that [Petitioner] shot him. Williams also identified [Petitioner] and Jordan from photographic line-ups and physical line-ups.

Resp. Ex. 5 at 6-7.

On the first day of trial, Petitioner's counsel informed the trial court outside the presence of the jury that counsel had just learned that morning of an alleged feud between Petitioner's family and Williams's family stemming from a nearly 15-year-old homicide in which Williams's uncle's girlfriend's son was convicted of killing Petitioner's cousin and uncle. Resp. Ex. 1 at 211-12. Counsel indicated that he wished to cross-examine Williams about this feud to demonstrate bias and Williams's motive to falsely identify

Petitioner as the perpetrator. The trial court held that cross-examination on the issue would not be permitted because the allegation of bias was too attenuated. *Id.* at 212.

During the presentation of its case, the State called Williams to testify. Williams described the shooting, identified Petitioner in the courtroom, testified that Petitioner was the shooter, and testified that he had previously identified Petitioner as the shooter in a police photographic lineup more than a month after the shooting. Defense counsel cross-examined Williams but did not raise the issue of his family's alleged feud with Petitioner's family or other potential bias.

As part of the State's case, a DNA analyst from the St. Louis Metropolitan Police Department Crime Laboratory also testified that DNA recovered from a baseball hat found on the scene of the crime contained DNA from four different individuals, two of which were main contributors, and that one of the main contributors was Petitioner.

Petitioner testified in his own defense at trial and presented the testimony of four of his relatives who each testified that Petitioner was at his grandmother Brenda Blount's apartment with other family members at or around the time of the shooting. Petitioner also testified that the baseball hat found at the crime scene did belong to him at one point, but that he shared the hat with multiple family members and that he had given the hat to Jordan several weeks before the shooting.

During cross-examination, the prosecutor elicited testimony from Petitioner that Petitioner owned and had worn the baseball hat found at the crime scene. The prosecutor then asked Petitioner whether he was the "main contributor" of the DNA found on the hat, and defense counsel objected that the question misstated the evidence. The trial

court sustained the objection "as to the main contributor questions," but the prosecutor went on to state: "You were the main contributor. You heard that evidence." Resp. Ex. 1 at 511. Petitioner answered: "I mean that is my hat, of course. Since it's mine, of course, I would be the main contributor. I mean I wore it the most." *Id.* Defense counsel did not renew his objection, and the trial court did not ask the jury to disregard this testimony.

The prosecutor further questioned Petitioner about being stopped by the police in connection with the shooting, as follows:

> [Prosecutor]: I mean you actually told the police they stopped you -- they told you have the right to remain silent and all that kind of stuff, right?
>
> [Petitioner]: Yes.
>
> [Prosecutor]: And you said, "I understand my rights."
>
> [Petitioner]: Yes, I did.
>
> [Prosecutor]: And you said, "I have an alibi for that night."
>
> [Petitioner]: And I said -- yes, sir.
>
> [Prosecutor]: And then you said, "But I'm not going to tell you what it is."
>
> [Petitioner]: No, I didn't say--
>
> [Prosecutor]: And you refused to tell the police what your alibi was, didn't you, Mr. Lotts?

*Id.* at 521-22.

At this point, Petitioner's trial counsel objected to the prosecutor's line of questioning and argued that it constituted improper impeachment. Counsel then moved for a mistrial. The prosecutor responded that Petitioner waived his Fifth Amendment right when he told police he had an alibi because he made a statement, even if he refused

4

to tell police the alibi. The trial court held: "Maybe half and one-half. I think once he refused to tell them, he might be invoking his right again, but I think you got that much out." *Id.* at 523. The trial court then denied the motion for a mistrial, and the prosecution moved on to a different line of questioning. *Id.*

During its rebuttal, the State presented the testimony of Michael Jones, who testified that he had known Petitioner for nine years and had lived with Petitioner and Petitioner's family for some time. Jones testified that, in December 2008, Petitioner confessed to Jones that Petitioner had shot two people who tried to rob him, and although Petitioner did not name the two victims, Jones "just kn[ew]" it was Williams and Starks. *Id.* at 544. The prosecutor also showed Jones a copy of a photographic line-up and asked Jones to identify Petitioner from the photograph. On cross-examination, defense counsel highlighted the fact that Jones did not tell police about Petitioner's confession until Jones had been incarcerated and wanted to exchange the information to get out of jail.

As noted above, on July 15, 2010, the jury found Petitioner guilty of murder in the first degree, assault in the first degree, and two counts of armed criminal action. It acquitted Petitioner of the remaining charges. The trial court sentenced Petitioner to life without parole for the murder count, 30 years' imprisonment for the assault count, and 20 years' imprisonment for the armed criminal action counts, all to run concurrently. The trial court then advised Petitioner of his rights to file a direct appeal and a motion for post-conviction relief. The trial court also engaged Petitioner in a colloquy regarding defense counsel's representation, after which the court found that no probable cause existed for ineffective assistance of counsel.

**Direct Appeal**

On direct appeal, Petitioner, through appointed counsel, argued that the trial court erred when it overruled defense counsel's motion for mistrial after the prosecution questioned Petitioner about his refusal to make a statement to the police because such questioning violated Petitioner's rights to due process and privilege against self-incrimination. Petitioner argued that the jury was tainted after hearing the improper evidence of his post-arrest silence regarding his alibi defense and that a mistrial was therefore the appropriate remedy.

On November 1, 2011, the Missouri Court of Appeals issued its opinion affirming the judgment of conviction and sentence. *See* Resp. Ex. 5. The appellate court held that Petitioner had not properly preserved his claim for a mistrial because he failed to raise it in his motion for a new trial. Conducting an analysis for plain error, the appellate court found that Petitioner's claim failed because Petitioner's voluntary statement to police that he had an alibi for the night of the incident waived his right to silence as to the subject matter of the alibi. Thus, the prosecutor's questions about the alibi and specifically about Petitioner's refusal to identify the alibi at the time of the police interview was an attempt to impeach Petitioner. The Missouri Court of Appeals found no error in the trial court's refusal to grant a mistrial after the prosecutor attempted to impeach Petitioner with his own statements and his "selective silence" regarding his alibi. *Id.* at 11.

Petitioner did not file a motion to transfer to the Missouri Supreme Court. *See* Resp. Ex. 6.

**State Post-Conviction Proceedings**

Petitioner filed a pro se motion for post-conviction relief in the state court on February 14, 2012. In his pro se motion, Petitioner raised the following claims: (1) trial counsel was ineffective for failing to object to the prosecution showing Jones a photograph of Petitioner; (2) trial counsel was ineffective for failing to depose Jones; (3) the trial court erred or abused its discretion when it denied Petitioner's claim of ineffective assistance of counsel; (4) the prosecutor committed misconduct by asking Petitioner whether he was the main contributor of DNA evidence found at the scene in violation of the trial court's ruling sustaining an objection to such questioning; (5) trial counsel was ineffective for failing to move for a mistrial after the prosecutorial misconduct described above; (6) trial counsel was ineffective for failing to cross-examine Williams about his alleged bias; (7) trial counsel was ineffective for failing to present testimony from alibi witnesses and family members Roger Sales, Cynthia Allen, Brenda Blountt, and Taeshay Guido; and (8) trial counsel was ineffective for failing to request a competency evaluation to determine Petitioner's mental competence to stand trial and assist counsel in his defense. Resp. Ex. 8 at 6-51.

In his amended motion for post-conviction relief, filed with the assistance of counsel, Petitioner incorporated each of his pro se claims and added to those claims that: (1) trial counsel was ineffective for failing to cross-examine Williams about his motive and bias to falsely accuse Petitioner of the shooting because Petitioner's father, Charles Lotts, testified against Williams's relative in another murder case; and (2) trial counsel was ineffective for failing to make an offer of proof regarding this evidence.

7

The motion court held an evidentiary hearing on June 26, 2014, at which Petitioner; Petitioner's trial counsel; Petitioner's father, Lotts; and Petitioner's brother, Sales testified. On September 8, 2014, the motion court denied Petitioner's motion for post-conviction relief.

The motion court addressed the claims raised in Petitioner's amended and pro se motions. The motion court rejected Petitioner's claim that counsel was ineffective for failing to cross-examine Williams regarding his potential bias or to make an offer of proof in that regard. The motion court noted that defense counsel did ask to be allowed to cross-examine Williams as to hostility between the families and that the trial court reasonably held that such hostility, which dated back 15 years, was too remote in time to demonstrate bias. Further, the motion court held that Petitioner's father's testimony at the evidentiary hearing failed to demonstrate animosity or bias, and thus would not have provided a defense. The motion court also noted that, during the trial, evidence demonstrated that Williams and Petitioner had previously worked together and "there was no suggestion of bad blood between them other than the speculation offered by [Petitioner]." Resp. Ex. 8 at 73. The motion court held that Petitioner failed to demonstrate that trial counsel's cross-examination was ineffective or that an offer of proof would have resulted in a different outcome on appeal, so as to establish prejudice.

The motion court then addressed the claims raised in Petitioner's pro se motion. With respect to Petitioner's claim that trial counsel erred when he failed to object to the State's lack of foundation before showing Jones a photograph of Petitioner at trial, the motion court held that the allegation was without merit because Jones had known

8

Petitioner for many years and had no issue with respect to Petitioner's identity. It further concluded that had trial counsel objected on this basis, there was no reasonable probability that the result of the trial would have been different.

The motion court next rejected as without merit Petitioner's claim based on trial counsel's failure to interview Jones or take his deposition. The motion court concluded that trial counsel "vigorously cross-examined and tried to discredit Jones." *Id.* at 77. The motion court noted that trial counsel "got Jones to admit that he made the statement regarding [Petitioner] after he was arrested and locked up in order to get out of jail." *Id.* The motion court further concluded that Petitioner failed to establish that Jones's alleged inconsistencies would have significantly undermined Jones's credibility or otherwise changed the outcome of trial, particularly in light of the other evidence against Petitioner.

Next, the motion court denied as refuted by the record Petitioner's allegation that the trial court erred when it determined there was no ineffective assistance of counsel. The motion court also rejected Petitioner's claim of prosecutorial misconduct arising from the prosecutor disregarding the trial court's ruling regarding the DNA "main contributor" questions. The motion court found that it was uncontested that the hat belonged to Petitioner, that other persons wore the hat, and that the DNA of Petitioner and other individuals was found on the hat. Thus, the motion court held that there was no reasonable probability that, had the prosecutor not pursued this line of questioning, the result of the trial would have been different.

As to Petitioner's claim that trial counsel was ineffective for failing to move for a mistrial after alleged prosecutorial misconduct described above, the motion court held

9

that there was no reasonable probability that Petitioner was deprived of the right to a fair trial based on the prosecutor's actions and that a mistrial would not have been granted had it been requested. Next, the motion court held that trial counsel was not ineffective for failing to cross-examine Williams for the reasons previously stated.

The motion court also denied as meritless Petitioner's claim that trial counsel was ineffective for failing to present testimony from the alibi witnesses Petitioner identified because all but one of those witnesses failed to appear at the evidentiary hearing, and Petitioner failed to provide evidence as to what those witnesses would have stated had they been called to testify at trial. Further, the motion court held that Sales, who did testify at the evidentiary hearing, admittedly "had nothing to offer regarding the night of the murder" and could not have provided Petitioner a viable defense at trial. *Id.* at 85-87. Finally, the motion court held that counsel was not ineffective for failing to request a competency evaluation because there was no evidence that Petitioner was incompetent.

On appeal from the denial of post-conviction relief, Petitioner, through appointed counsel, pursued only the ineffective-assistance claims relating to cross-examining Williams regarding his bias, failing to make an offer of proof regarding the family feud, and failing to call Sales as a witness at trial.

On December 22, 2015, the Missouri Court of Appeals affirmed the motion court's judgment. In affirming the denial of post-conviction relief, the appellate court noted that the trial court had granted a motion in limine to prohibit eliciting testimony regarding the family feud on the basis that the evidence of the alleged bias was too attenuated; thus, "if [trial counsel] had attempted to cross-examine and impeach Williams

on that very ground, his questions would have been inadmissible." Resp. Ex. 13 at 9. The appellate court found that counsel was not ineffective for failing to elicit testimony that was inadmissible under the motion in limine. The appellate court further found that Petitioner's claim that trial counsel was ineffective for failing to make an offer of proof failed because ineffective-assistance claims are limited to errors that affect a criminal defendant's right to a fair trial, rather than his ability to appeal a conviction, and because there was little chance that, had counsel made an offer of proof as to the alleged family feud, the trial court's decision would have been reversed on appeal.

As to Petitioner's claim regarding counsel's failure to call Sales as a witness, the Missouri Court of Appeals held that Petitioner failed to establish that Sales's testimony would have provided a viable defense or alibi, so trial counsel was not ineffective for choosing not to call him as a witness. The Missouri Court of Appeals issued its mandate on January 14, 2016.

**Federal Habeas Petition**

Petitioner filed his petition for writ of habeas corpus in this Court on November 14, 2016, by placing it in the prison mail system. ECF No. 1 at 15. Petitioner raises ten grounds for federal habeas relief: (1) the trial court erred when it denied his request for a mistrial; (2) trial counsel was ineffective for failing to cross-examine Williams about his alleged bias; (3) trial counsel was ineffective for failing to call Sales as a defense witness to testify about the baseball hat; (4) the motion court erred in denying Petitioner's motion for post-conviction relief based on counsel's failure to cross-examine Williams; (5) trial counsel was ineffective for failing to depose Jones; (6) the trial court erred and/or abused

11

its discretion in rejecting Petitioner's ineffective-assistance-of-counsel claim (7) the prosecutor committed misconduct by continuing to question Petitioner about DNA evidence in violation of the trial court's evidentiary ruling; (8) trial counsel was ineffective for failing to object to Jones's identification of Petitioner; (9) trial counsel was ineffective for failing to move for a mistrial after the prosecutorial misconduct described above; and (10) trial counsel was ineffective for his failure to present testimony from alibi witnesses Sales, Cynthia Allen, Brenda Blountt, and Taeshay Guido.

Respondent argues that the petition is untimely as it was filed beyond the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Further, Respondent maintains Petitioner's claims are not cognizable in habeas corpus, are procedurally barred because they were not raised at the state court level, or are otherwise without merit. Petitioner did not file a reply, and the time to do so has passed.

## DISCUSSION

### Statute of Limitations

As an initial matter, the Court agrees that the petition is untimely. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a one-year statute of limitations period for petitioners seeking federal habeas relief from state court judgments. *Finch v. Miller*, 491 F.3d 424, 426 (8th Cir. 2007). In this case, the one-year statute of limitations began to run on the date Petitioner's judgment became final, meaning the date on which the time for seeking review in the Missouri Supreme Court expired. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Because Petitioner did not seek transfer to the Missouri Supreme Court, his

limitations period began to run 15 days after the Missouri Court of Appeals affirmed his conviction on direct appeal, or November 16, 2011. *See Camacho v. Hobbs*, 774 F.3d 931, 935 (8th Cir. 2015) (stating that when a petitioner foregoes state appeals, the court must look to state-court filing deadlines to determine the expiration of the time for seeking direct review); and Mo. S.Ct. R. 83.02 ("Application by a party for such transfer shall be filed within fifteen days of the date on which the opinion, memorandum decision, written order, or order of dismissal is filed.").

Petitioner did not file a state post-conviction motion until 90 days later, on February 14, 2012. These 90 days count against the one-year statute of limitations. *See Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001); *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 853-54 (8th Cir. 2003). The statute of limitations was thereafter tolled while Petitioner's state post-conviction proceeding was pending, *see* 28 U.S.C. § 2244(d)(2), and until the Missouri Court of Appeals issued its mandate in that proceedings on January 14, 2016, *see Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006) (determining that petitioner's petition, filed exactly one year after the issuance of the mandate in his post-conviction case, was timely). Petitioner thereafter had 275 days to file his federal habeas petitioner in order for that petition to be timely. But Petitioner waited 305 days, until November 14, 2016, to place his petition in the prison mail system. As such, Petitioner's petition is untimely.

However, the statute of limitations in § 2244(d) is subject to the doctrine of equitable tolling. *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001). Although Petitioner has not directly asserted that equitable tolling should apply here, he indicates in

his petition that he never received a copy of the Missouri Court of Appeal's decision denying his direct appeal. *See* ECF No. 1 at 2. Without deciding whether equitable tolling should apply under such circumstances, the Court will review Petitioner's claims on the merits, as such review is straightforward. *See Stansberry v. Lombardi*, No. 4:13 CV 663 CDP, 2016 WL 4089281, at *1 n.2 (E.D. Mo. Aug. 2, 2016).

**Legal Standard**

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to show ineffective assistance of counsel, "a [petitioner] must show that counsel's performance was deficient," and "that the deficient performance prejudiced [his] defense." *Id.* at 687. When "[c]onsidering an attorney's performance, [the court] must

14

indulge a strong presumption that the conduct was reasonable, and the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). In other words, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (citation omitted). In order to show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 753 (citations omitted).

**Non-Cognizable Claims (Claims 4 and 6)**

Petitioner's claims that the motion court erred in denying his motion for post-conviction relief (Claim 4) and the trial court erred in rejecting his ineffective assistance claim (Claim 6) are "attacks on proceedings collateral to detention and not on the detention itself," and are therefore not cognizable in this federal habeas proceeding. *See Williams v. Missouri*, 640 F.2d 140, 144 (8th Cir. 1981). However, Petitioner's underlying ineffective assistance of counsel claims are cognizable federal habeas claims and will be addressed below.

**Procedurally Defaulted Claims (Claims 1, 5, and 7-10)**

Petitioner's Claims 1, 5, and 7 through 10[1] were procedurally defaulted in state court. Under the doctrine of procedural default, a federal habeas court is barred from

---

[1] Petitioner's Claim 10 was defaulted as to all potential alibi witnesses except Sales. Petitioner's claim with respect to Sales is duplicative of Claim 3, which was reviewed by

considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011).

As to the first claim, that the trial court erred when it denied Petitioner's request for a mistrial after the prosecutor questioned Petitioner about his refusal to make a statement to the police, the Missouri Court of Appeals noted that Petitioner did not preserve this claim for direct appeal but nevertheless reviewed the claim for plain error. A "state court's discretionary plain-error review of [an] unpreserved claim[] cannot excuse [a habeas petitioner's] procedural default." *Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015).[2]

Petitioner raised Claims 5 (failing to depose Jones), 7 (prosecutorial misconduct), 8 (failing to object to Jones's identification), 9 (failing to move for mistrial as a result of prosecutorial misconduct), and 10 (failing to present testimony of alibi witnesses) in his pro se and amended motions for post-conviction relief. However, he did not pursue the above-noted claims on appeal from the denial of that motion. The Court's review of

---

the state courts and will be addressed on the merits below.

[2] Petitioner does not claim in his federal habeas petition that trial counsel was ineffective for failing to preserve the request for a mistrial. And such a claim would have been procedurally defaulted, not having been raised in Petitioner's state post-conviction proceedings. Nor would the ineffective assistance of post-conviction counsel for failing to raise such a claim excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012), because the claim lacked merit. *See Martinez*, 566 U.S. at 16. Indeed, the Missouri Court of Appeals correctly held that the prosecutor's attempt to impeach Petitioner with his voluntary statements and silence as to the subject matter of those statements did not violate Petitioner's Fifth Amendment rights, *see Anderson v. Charles*, 447 U.S. 404, 408 (1980), and that a mistrial was not warranted.

these claims is therefore barred, and ineffective assistance of postconviction appellate counsel has not been recognized as cause to excuse such a default. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

In short, Claims 1, 5, and 7 through 10 were procedurally defaulted in state court, and Petitioner raises no cause to excuse the default. Petitioner has also failed to show that a miscarriage of justice will result if his defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (holding that a petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the miscarriage of justice exception).

**Remaining Claims (Claims 2 and 3)**

As to the claims which were not defaulted, the Court concludes that each is without merit. When addressing claims that were addressed by state courts, "[t]aken together, AEDPA and *Strickland* establish a doubly deferential standard of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). It is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

With respect to Claim 2, the state court reasonably found that trial counsel was not ineffective for failing to cross-examine Williams about his alleged bias, in light of the trial court's ruling on the motion in limine, as well as the attenuated nature of the bias theory. Regarding Claim 3, the state court reasonably held that trial counsel was not

17

ineffective for failing to call Sales as a witness because Sales's testimony was inconsequential. Sales's anticipated testimony that Petitioner gave the baseball hat to Jordan was consistent with the State's theory of the case that Jordan was also present at the shooting. It would not have exonerated Petitioner, particularly in light of the other evidence against him.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (standard for issuing a Certificate of Appealability) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Darel Lotts for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2020.